W. SHARP, Judge.
The Department of Natural Resources appeals from a final summary judgment entered in a declaratory judgment suit brought by Industrial Plastics Technology, Inc. The trial court ruled Industrial is the rightful fee owner of submerged land located in the St. Johns River, which is directly beneath its boathouse and dock, and ordered the Department to issue a disclaimer of such land to Industrial, pursuant to section 253.129, Florida Statutes.[1] The primary issue for determination in this case is whether Industrial’s predecessors in title obtained title to the submerged lands pursuant to the Butler Act[2] by virtue of a predecessor in title having built the dock and boathouse during the years of 1949 to 1954.
Industrial established, through affidavits and exhibits, the following factual scenario, which was not disputed by the Department. In 1926, the river front property in Welaka was purchased by George and Vera Douglas. They sold it to D.O. Douglas, who built an older dock in the St. Johns River to moor his yacht. He resold the property to George and Vera Douglas.
In 1949, the Douglases orally agreed to sell the property to the Warrs. The Warrs cleared the property, built a residence and also built the dock and boathouse at issue in this case. They obtained legal title to the property in 1953. Their construction of improvements was complete in 1954.
In 1987, the Warrs sold the property to Robert and Rosa Harvey. The Harveys sold the property to Industrial in 1989. At that time the dock and boathouse had fallen into disrepair. Industrial replaced some pilings, the roof of the boathouse, and repaired some exterior walls. No changes in the dimensions of length or width were made to the boat house or dock.
Prior to Industrial's being able to complete repairs to the dock and boathouse, the Department threatened Industrial with criminal prosecution if it did not halt work *1305 on the project before obtaining a construction permit from it. It also insisted that Industrial obtain a submerged land lease from it. Industrial requested issuance of a disclaimer from the Department, pursuant to section 271.01. When it was unable to obtain a satisfactory resolution of this dispute with the Department, Industrial filed this lawsuit to establish its rights.
The Department argues that no activity the Warrs did on the property counts pursuant to the Butler Act[3] because they lacked legal title until 1953. The Butler Act provides:
The state, subject to any inalienable trust under which the state holds all submerged lands and water privileges within its boundaries, divests itself of all right, title and interest to all lands covered by water lying in front of any tract of land owned ... by any municipality, county or governmental corporation under the laws of Florida, lying upon any navigable stream or bay of the sea or harbor, as far as to the edge of the channel; and vests the full title to the same, subject to said trust in and to the riparian proprietors ... provided, that the grant herein made shall apply to and affect only those submerged lands which have been, or may be hereafter, actually bulkheaded, filled in, or permanently improved, continuously, from high water mark in the direction of the channel, or as near in the direction of the channel as practicable to equitably distribute the submerged lands, and shall in no wise affect such submerged lands until actually filled in or permanently improved.
§ 271.01, Fla.Stat. (1921).
Although the Warrs were not legal title holders of the property in 1949 when they took possession of it, they clearly had a claim to a beneficial interest, which ripened into legal title in 1953. Whatever work they did on the property, clearing the land and constructing improvements, was done with the consent of the Douglases. It would have inured to the Douglases’ benefit as “riparian proprietors”, had the Warrs been ejected. So also, it would have inured to their own benefit, were they still owners. Accordingly, Industrial is entitled to step into their shoes, as a successor riparian owner. We find no limitation in the Butler Act that the permanent improvement must be made by a person who holds legal title when the work is done, or that disclaimers are due only to the riparian owner who makes the permanent improvement.
The Department also argues that-the wooden boat dock and boathouse at issue in this case are not “permanent” improvements as contemplated by the Riparian Rights Act of 1856 and the 1921 Butler Act. In support, it cites Jacksonville Shipyards, Inc. v. Department of Natural Resources, 466 So.2d 389 (Fla. 1st DCA 1985). There the court described the Riparian Rights Act and the Butler Act as having been designed to encourage commerce and navigation. Piers, docks, wharves, dry-docks and railroad trestles, comprising much concrete and steel, were involved in that case. The court held that sufficient “permanent improvements” had been made to satisfy the Butler Act, and that it was not also necessary to show “filling in.” But there is nothing in the Jacksonville Shipyards case which compels a holding that a wooden dock and boat house built for residential use do not qualify as “permanent” improvements under the Butler Act.
The Department also cites Williams v. Gutherie, 102 Fla. 1047, 137 So. 682 (1931), as support for its position. A wooden dock or wharf, which extended into a bay, was involved in that case. Attached to the wharf were buildings, but it is not clear from the case whether they were also built over submerged land. Key to understanding this case is the fact that the dispute was between private parties, one seeking to eject the other, and Gutherie was required to win on the strength of his own title. The court reversed a judgment for Gutherie.
On rehearing, the Butler Act was called to the attention of the court, apparently for *1306 the first time. The court denied it had overlooked the Butler Act in its initial opinion, although it had not mentioned it. It concluded the Butler Act should not be applied in the case to help Gutherie because he had failed to allege or prove any facts which would make the Butler Act applicable. Further, the court suggested, since the state was not a party to the lawsuit, the lower court might lack jurisdiction to adjudge the state had lost title to the submerged land.
We think the Butler Act includes residential as well as commercial improvements to riparian lands. There is nothing in the statute which limits “permanent” improvements to business, commercial or industrial uses. In the context of acquisition of title to submerged lands “improvements” have been held to include buildings, wharfs, piers, dry-docks and other structures affixed to tidal or submerged lands, which were constructed for business, commercial, recreational, residential or other beneficial use or purposes. State v. A.J. Industries, Inc., 397 P.2d 280 (Alaska 1964).
Further, we think that a wooden dock and boathouse are “permanent” improvements to the riparian lot in the same sense and manner as is a house made of wood. Neither may last as long as structures made of steel and concrete, but both last long enough in the context of human life to be classified as “permanent improvements.”
The Department also argues that the Warrs’ completion of the dock and boathouse in 1954 was too late to give them and their successors title to the submerged land because the Butler Act was repealed by implication in 1951. Chapter 26-776, Laws of Florida (1951), provides:
Section 1. Title to tidal lands vested in state — Except as to lands in Dade and Palm Beach counties, the title to all the sovereignty tidal water bottoms, including all islands, sandbars, shallow banks, and small islands made by the process of dredging of the channel by United States government and similar or other islands, sandbars and shallow banks located in the tidal waters of the State of Florida is vested in the trustees of internal improvement fund of the State of Florida to be held by the trustees of the internal improvement fund and disposed of as provided in this chapter.
* * * * * *
Section 3. All laws and parts of laws in conflict herewith, except section 253.-06, Florida Statutes, which is specifically reaffirmed, are hereby repealed.
In Duval Engineering and Contracting Co. v. Sales, 77 So.2d 431 (Fla.1954), the court assumed that as to the submerged lands in question, the Butler Act had been repealed in 1951.[4] The issue in that case was whether the riparian owners had obtained title to submerged lands in the St. Johns River near Jacksonville, although they had not filled in or improved the submerged land, as required by the Butler Act. They sought to stop the state from constructing a bridge over the river, which was part of the Jacksonville Expressway. The court held that without the required fill-in or permanent improvements there could be no title vested in the riparian owner.
However, in Board of Trustees of the Internal Improvement Trust Fund v. Sand Key Assoc. Ltd., 512 So.2d 934 (Fla.1987), in discussing the Butler Act, the court noted that the public policy enunciated by the Riparian Rights Act of 1856 and the Butler Act of 1921, was expressly repealed by statute in 1957. Chapter 57-362, section 9 provides:
Section 271.01, Florida Statutes, is hereby expressly repealed, provided, however, that the title to all lands heretofore filled or developed is herewith confirmed in the upland owner and the Trustees shall on request issue a disclaimer to each owner.
If Chapter 26-776 repealed the Butler Act in 1951, why was the express repealer of Chapter 57-362 necessary? It was only *1307 needed if the Butler Act had some continued sphere of impact remaining after 1951. Comparing the Butler Act with Chapter 26-776, it can be seen that the Butler Act encompassed a wider segment of submerged land than did Chapter 26-776. All submerged lands were covered in the Butler Act. Only tidal lands outside Dade and Palm Beach Counties are covered by Chapter 26-776.
Thus, it could be logically possible for both the Butler Act and Chapter 26-776 to coexist from 1951 to 1957. The Butler Act then covered all freshwater submerged lands and tidal lands in Dade and Palm Beach Counties. Chapter 26-776 covered only tidal submerged lands in all but Palm Beach and Dade Counties. To find an implied repeal of an earlier statute, the later statute must irreconcilably conflict, or constitute a complete revision of the subject matter, so as to strongly indicate the Legislature’s intent to abolish the older statute. See State v. Dunmann, 427 So.2d 166 (Fla.1983); Town of Indian River Shores v. Richey, 348 So.2d 1 (Fla.1977).
We conclude that the Butler Act continued in effect for the property involved in this case until 1957, when it was expressly repealed. In Welaka, at the point in the north-flowing St. Johns River where the submerged property is located, the river is a flow of fresh water. It is neither “tidal” nor influenced by the Atlantic Ocean. It is like the other large fresh water navigable lakes in central Florida. Chapter 26-776 would not have applied to it, although near Jacksonville where the St. Johns River empties into the Atlantic Ocean, the submerged land could be considered “tidal” and the 1951 repealer might well have affected those submerged lands.[5]
AFFIRMED.
PETERSON and DIAMANTIS, JJ., concur.

. Section 253.129 provides as follows:
Confirmation of title in upland owners.— The title to all lands heretofore filled or developed is herewith confirmed in the upland owners and the trustees shall on request issue a disclaimer to each such owner.

. Section 271.01, Florida Statutes (1921).

. §§ 271.01-271.03, Fla.Stat. (1921).

. See also Jacksonville Shipyards, Inc. v. Department of Natural Resources, 466 So.2d 389 (Fla. 1st DCA 1985); 1957 Op. Att’y Gen. Fla. 057-215 (July 30, 1957).

. See Jacksonville Shipyards.