633 So.2d 50 (1994)
Lawton CHILES, Betty Castor, Jim Smith, Tom Gallagher, Gerald A. Lewis, Robert A. Butterworth and Bob Crawford, as Board of Trustees of the Internal Improvement Trust Fund and the Department of Natural Resources, a State Agency, Appellants,
v.
FLORIDIAN SPORTS CLUB, INC., a Florida Corporation, Appellee.
No. 93-629.
District Court of Appeal of Florida, Fifth District.
February 11, 1994.
Rehearing Denied March 24, 1994.
L. Kathryn Funchess and Kenneth J. Plante, Tallahassee, for appellants.
R.R. Crabtree, of Crabtree & White, P.A., Jacksonville, for appellee.
HARRIS, Chief Judge.
The issue on appeal concerns whether the trial court erred in holding, as a matter of law, that the waters of the St. Johns River in Welaka (Putnam County) are non-tidal.
Floridian Sports Club, Inc. (Floridian), appellee herein, is the owner of certain real property located adjacent to the St. Johns River in Welaka, Florida. A former owner purchased the site in 1947 and sometime before 1953 constructed a fishing camp on the property.
After a series of intervening transfers, the property was sold to Malishewsky and Ritchey who executed a sovereign submerged lands lease in which they agreed to make annual rental payments of $881.80 to the State of Florida for the submerged land upon which the boathouse and dock are located. This lease was still in force when the property was sold to Floridian.
Upon receiving notification from the State that lease payments were due, Floridian sought a declaratory judgment to determine whether it was entitled to a disclaimer from the Board of Trustees of the Internal Improvement Trust Fund ("the Trustees") exempting Floridian from the terms of the submerged land lease. Floridian then filed a motion for summary judgment in which it alleged that improvements had been constructed on the submerged land between 1949 and 1953 and therefore, pursuant to the Butler Act, the State had no title to the submerged lands.
Appellants, the Trustees and the Department of Natural Resources, filed a response in opposition to Floridian's motion for summary judgment in which they alleged that the St. Johns River at the location of the submerged lands at issue is tidally influenced. Therefore, Appellants urged that in *51 order to gain the protection of the Butler Act, Floridian must prove that the improvements were completed prior to May 29, 1951, the date of the repeal of the Act as to submerged land in tidal waters.[1] Because there remained factual issues concerning the character of the river at this location and the date of the construction of the improvements, Appellants maintained that summary judgment was improper.
In support of this argument, Appellants filed two affidavits in opposition to the motion for summary judgment, one from a professional land surveyor and another from the chief of the bureau of survey and mapping. Both affidavits, by referring to water level measurements at certain tidal stations, unequivocally state that the waters of the St. Johns River in the area of the submerged land at issue are tidal.
The trial court granted Floridian's motion for summary judgment, holding that this court's opinion in Dept. of Natural Resources v. Industrial Plastics Technology, Inc., 603 So.2d 1303 (Fla. 5th DCA 1992), rev. denied, 617 So.2d 318 (Fla. 1993), foreclosed the issue of whether the waters of the St. Johns River adjacent to Welaka were tidal. The trial court reasoned that Industrial Plastics requires that the title benefits of the Butler Act be confirmed in riparian owners who constructed permanent improvements on abutting submerged lands prior to 1957. Because there was no factual dispute that the improvements in this case occurred prior to 1957, the court entered an order granting summary judgment.
On appeal, Appellants contend[2] that the trial court erred in granting summary judgment because two genuine issues of fact remained unresolved: First, whether the waters of the St. Johns River in Welaka are non-tidal, and second, exactly when the improvements were constructed. Appellants maintain that because they introduced two affidavits indicating that in fact the subject waters were tidally influenced, the trial court erred in holding as a matter of law that these waters were non-tidal. If it is proved that the waters are tidal, then the second issue of fact, when the improvements were constructed, becomes crucial because, after 1951, the Butler Act's protection extended only to improvements in non-tidal waters.
Floridian responds that in Industrial Plastics this court held conclusively that the waters of the St. Johns in Welaka are non-tidal. Therefore, the trial court was correct in holding that Industrial Plastics is dispositive as to the issue of whether the water is tidal or not. Because the waters are non-tidal, Floridian urges, the fact that the affidavits Floridian submitted are conflicting as to the date the improvements were constructed is irrelevant. Even the latest date indicated is some four years before the repeal of the Butler Act as to non-tidal waters, and therefore the conflict does not create an issue of material fact.
We agree with Appellants that summary judgment was improper because genuine issues of material fact exist.
Some historical background is necessary. In 1921, in an effort to encourage development of the navigable waterways of Florida to improve navigation and commerce, the legislature passed the Butler Act[3] which provides in part:
The state ... divests itself of all right, title and interest to all lands covered by water lying in front of any tract of land owned by the United States or by any person, natural or artificial ... lying upon any navigable stream or bay of the sea or harbor, as far as to the edge of the channel, and hereby vests the full title to the same ... in and to the riparian proprietors, giving them the full right and privilege to build wharves into streams or waters of the bay or harbor as far as may be necessary to affect the purposes described, to fill up *52 from the shore, bank or beach as far as may be desired, not obstructing the channel, but leaving full space for the requirements of commerce, and upon lands so filled in, to erect warehouses, dwellings or other buildings ... also confirming to the riparian proprietors all improvements which may have heretofore been made upon submerged lands.
Provided that the grant herein made shall apply to and affect only those submerged lands which have been, or may be hereafter, actually bulkheaded or filled in or permanently improved continuously from high water mark in the direction of the channel ... and shall in no wise affect such submerged lands until actually filled in or permanently improved.
Section 271.01, Fla.Statutes (1949). The Butler Act granted upland riparian owners a qualified title to submerged lands that vested upon fulfillment of the express requirements outlined in the Act. Holland v. Fort Pierce Financing and Constr. Co., 157 Fla. 649, 27 So.2d 76 (1946).
In 1951, the legislature enacted Chapter 26-776, Laws of Florida (1951), which partially repealed the Butler Act by providing that, "Except as to lands in Dade and Palm Beach counties, the title to all the sovereignty tidal water bottoms... is vested in the trustees of internal improvement fund of the State of Florida ..." (emphasis added). The Butler Act remained viable as to all non-tidal submerged lands in the state and all tidal lands in Dade and Palm Beach counties. Industrial Plastics, 603 So.2d at 1306-07. Then in 1957, the legislature enacted Chapter 57-362, Laws of Florida, commonly known as the Bulkhead Act and codified as section 253.12, Florida Statutes (1957). The Bulkhead Act was an express repeal of the entire Butler Act, both as to tidal and non-tidal waters.
In Industrial Plastics, this court held that a landowner who built a dock and boathouse on the St. Johns River in Welaka, the construction of which was not completed until 1954, still enjoyed the protection of the Butler Act because the waters at the point where the submerged property was located were non-tidal:
In Welaka, at the point in the north-flowing St. Johns River where the submerged property is located, the river is a flow of fresh water. It is neither "tidal" nor influenced by the Atlantic Ocean. It is like the other large fresh water navigable lakes in Central Florida.
Industrial Plastics, 603 So.2d at 1307.
That language, however, is based on the record before the court in the Industrial Plastics case and, while it is the law of the case as it relates to those parties and the property involved in that litigation, it does not foreclose a different result based on a different record. Whether or not the St. Johns River is tidal at any particular location is a matter of fact to be determined by the evidence, not a matter of law to be pronounced in one case that cannot be changed by a later panel based on a more complete record.
In the instant case, Appellants presented evidence by affidavit that the waters of the St. Johns River in Welaka are tidally influenced.[4] Apparently no such affidavits were presented in the Industrial Plastics case. Thus, the Industrial Plastics holding regarding the non-tidal nature of the waters of the St. Johns River in Welaka is limited to the *53 specific facts and legal background of that case. In the instant case, the introduction of evidence that the subject waters are tidal raised a genuine issue of material fact and summary judgment was inappropriate. Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
REVERSED and REMANDED for further proceedings consistent with this opinion.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] The Act was not repealed as to submerged land in non-tidal waters until 1957. Dept. of Nat. Resources v. Industrial Plastics Technology, Inc., 603 So.2d 1303 (Fla. 5th DCA 1992).
[2] Counsel for the Appellant, Department of Natural Resources, failed to include even one record cite in her brief. Although the record in this case is moderate, Rule 9.210(b), Florida Rules of Appellate Procedure, expressly requires that such citation be included.
[3] Duval Engineering and Contracting Co. v. Sales, 77 So.2d 431 (Fla. 1954).
[4] Black's provides some illumination regarding the "tidal" nature of rivers:

In order that a river may be "tidal" at a given spot, it may not be necessary that the water should be salt, but the spot must be one where the tide, in the ordinary and regular course of things, flows and reflows.
Black's Law Dictionary 1652 (rev. 4th ed. 1968). The affidavits in the instant case indicate that the river rises and falls approximately five inches during the tide changes.
The affidavits, however, do not establish that the river was so affected by the tides in 1951, the year the Butler Act was repealed as to tidal waters. Therefore, this will remain an issue on remand because subsequent changes in the character of the water do not change the ownership of the land:
If ... private ownership ... of land under water, is once established, by reason of the tidal or nontidal character of the water, the fact that the character of the water in this regard is changed, by reason of the building of a dam or the cutting of a channel, does not ... operate to change the ownership of the land.
2 Herbert Thorndike Tiffany, The Law of Real Property S. 659 (1939).